FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 24, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARLENE LENE B., | No. 1:17-cv-03208-SAB |
| Plaintiff, | |
| v. | **ORDER GRANTING** |
| COMMISSIONER OF SOCIAL | **PLAINTIFF'S MOTION FOR** |
| SECURITY ADMINISTRATION, | **SUMMARY JUDGMENT;** |
| Defendant. | **DENYING DEFENDANT'S** |
| | **MOTION FOR SUMMARY** |
| | **JUDGMENT** |

Before the Court are Plaintiff's' Motion for Summary Judgment, ECF No. 10, and Defendant's Cross-Motion for Summary Judgment, ECF No. 11. The motions were heard without oral argument. Plaintiff is represented by D. James Tree; Defendant is represented by Assistant United States Attorney Timothy Durkin and Special Assistant United States Attorney Summer Stinson.

**Jurisdiction**

On March 6, 2014, Plaintiff filed a Title II application for disability insurance benefits. Plaintiff alleges an onset date of February 4, 2014.

Plaintiff's application was denied initially and on reconsideration. On April 5, 2016, Plaintiff appeared and testified at a hearing held in Yakima, Washington before an ALJ. Plaintiff testified and was represented by counsel, Robert Tree. Kimberly Mullinex, M.A. also appeared and testified as a vocational expert.

The ALJ issued a decision on December 21, 2016, finding that Plaintiff was

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1

not disabled. Plaintiff timely requested review by the Appeals Council, which denied the request on October 16, 2017. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on December 12, 2017. The matter is before this Court under 42 U.S.C. § 405(g).

## Sequential Evaluation Process

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a)(4); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 404.1571. Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. §§ 404.1510, 1572. If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i). If she is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. *Id.* A severe impairment is one that lasted or must be expected to last

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 404.1509. If the impairment is severe, the evaluation proceeds to the third step. 20 C.F.R. § 404.1520(a)(4)(ii)

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1520(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 404.1545. An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *Id.*

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. § 404.1520(f). If the claimant is able to perform her previous work, she is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education, and work experience? 20 C.F.R. § 404.1520(g).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098. This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

## Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## Statement of Facts

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs to this Court; only the most relevant facts are summarized here.

At the time of the hearing, Plaintiff was 46 years old. She had previously worked for over 30 years in the insurance industry. After she was let go from her job for too many absences, she attempted to work at a flower shop. That job lasted

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

two weeks. She was fired because she was unable to master the computer and keep up with the demands of the job.

Plaintiff has suffered from depression and anxiety for many years. She attempted suicide twice, once in 1998 and another in the mid-2000s. She required psychiatric hospitalization after her second suicide attempt. Although she returned to work, she never returned to a full-time schedule and was calling in sick several times per month. Eventually, she trained her replacement and she was fired from her job.

Plaintiff has good days and bad days. On the good days, she is able to complete craft projects, including making homemade cards and wreaths. On bad days, she does not socialize and will spend the day on the couch. She is able to complete housework and cooks for her family. She has been married for over 30 years.

### The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. AR 20.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 4, 2012. AR 20.

At step two, the ALJ found Plaintiff has the following severe impairments: major depressive disorder; anxiety disorder. AR 21.

At step three, the ALJ found that Plaintiff's impairments or combination of impairments do not meet or medically equal any Listing. AR 21. Specifically, the ALJ reviewed Section 12.04 (affective mental disorders) and Section 12.06 (anxiety-related disorders) of the listings of impairments.

The ALJ concluded that Plaintiff has the residual functional capacity to perform:

> a full range of work at all exertional levels but with the following
> non-exertional limitations. This individual is able to perform simple,

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

routine, repetitive tasks. She can have superficial, occasional contact with co-workers and no contact with the public.

AR. 22. At step four, the ALJ found that Plaintiff was not capable of performing past relevant work as an insurance clerk, but found she could perform other work that exists in significant numbers in the national economy, including positions such as kitchen helper; industrial cleaner; and laundry worker II. AR 27.

## Issues for Review

1. Whether the ALJ properly considered and weighed the opinion evidence;

2. Whether the ALJ properly considered lay witness testimony from Glen Bangs;

3. Whether the ALJ properly evaluated Plaintiff's testimony regarding her symptoms.

## Discussion

*1.    Whether the ALJ properly considered and weighed the opinion evidence*

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion evidence.

The medical opinion of a claimant's treating physician is given "controlling weight" as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. § 404.1527(c)(2)-(6); *Id.* "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 675 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "[A]n ALJ errs when he rejects a

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

The record contains three opinions from medical professionals: Dr. Carina Bauer, an examining medical source, Dr. Gordon Hale and Dr. Gollogly, who provided a joint report as state-agency consultants, and Shannon Neer, PA-C, the physician's assistant who is treating Plaintiff.[1]

### Dr. Carina D. Bauer

Dr. Bauer interviewed Plaintiff on June 1, 2014. AR 286. She reported that Plaintiff was soft-spoken, nervous, and shy during the examination. AR 290. She spoke is a slow, soft, high-pitched voice. AR 290. Dr. Bauer described Plaintiff as being dysphoric, sad, and anxious. AR 290.

Dr. Bauer gave the following conclusions after her examination:

Darlene appears capable of managing simple and repetitive tasks, as well as detailed and complex tasks, evident in how well she performed on the mental status examination and the hobbies she participates in at home (i.e. making cards and wreaths).

Darlene appears able to accept instructions from supervisors evident in how well she was able to understand this writer's instructions on the mental status exam.

Darlene appears to have some moderate difficulty interacting with coworkers and the public. She appeared to be somewhat anxious during this examination, evident in her having some difficulties answering this writer's questions and needing some support and prompting. Also, she has a history of anxiety issues which may make it challenging for her to adjust to a new work setting and have to interact with customers and coworkers.

Darlene appears able to perform work activities on a consistent basis without special or additional instructions.

Darlene appears to have moderate difficulty maintaining regular attendance in the workplace. She may have difficulty completing a

[1] The ALJ referred to Ms. Neer as Shannon Leer. AR 26.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

normal workday/workweek without interruptions from psychiatric conditions. Darlene noted, in her past job, she was able to maintain employment there for 17 years because they provided a flexible and supportive schedule and environment for her, especially at times when she dealt with bouts of depression and had suicide attempts. She'd likely benefit from flexibility and time off when dealing with bouts of depression.

Darlene appears to have moderate difficulty managing usual stress in the workplace. For instance, she noted having a lot of anxiety and stress looking for a new job. She was able to manage the stress of her past job for 17 years because they were very adaptive and flexible to her needs and that it was a stable and supportive environment. Likely working in a new environment with new people and new tasks may cause an increase of anxiety and depressive symptoms.

AR 291-92.

### **Dr. Gordon Hale and Dr. Vincent Gollogy**

On September 15, 2014, Dr. Gordon Hale and Dr. Vincent Gollogy provided a Disability Determination Explanation. AR 80-90. They found there was no evidence of severe physical impairment lasting or expected to last at least 12 consecutive months. AR 84. They also found that Plaintiff has sustained concentration and persistence limitations, AR 86, and was moderately limited in the following areas:

- The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- The ability to interact appropriately with the general public
- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- The ability to respond appropriately to changes in the work setting.

AR 87-88.

In addressing her limitations, they explained that:
- Clmt able to understand, remember & carry out SRT & complex /detailed tasks. She may have some interruptions of her NL wk day /wk week from Y sx, that may also affect her attendance on occ.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

However she would be able to persist at SRT & familiar detailed tasks.
- Clmt's anxiety would on occ affect her ability to interact well w /co-workers & general public. However she would be able to interact on superficial, limited level.
- Clmt able to respond appropriately to simple changes in routine.

AR 87-88.

Dr. Hale and Dr. Gollogly ultimately concluded Plaintiff was not disabled. AR 89.

**Shannon Neer, PA-C**

On January 26, 2015, Shannon Neer completed a Medical Report. AR 294-95. She identified Plaintiff's medical condition as having depression and labile emotional health. AR 295. She indicated that work on a regular and continuous basis would be affected because Plaintiff would be unable to cope with stressful situations. AR 295. She believed that Plaintiff would miss 4 or more days a week because her mental health issues were not 100% stable. AR 295.

**ALJ's Review of Medical Source Opinions**

All the medical sources agreed that Plaintiff suffered from depression and anxiety. All the medical sources agreed that Plaintiff's depression and anxiety would affect her ability to complete a 5 day, 40 hour work week. This is consistent with the record, as Plaintiff never returned to full time work after her second suicide attempt.

Dr. Gollogly concluded that Plaintiff's symptoms would affect her work week occasionally, while Dr. Bauer concluded that Plaintiff would have moderate difficulty maintaining regular attendance in the workplace. Ms. Neer indicated that Plaintiff would miss more than 4 days a week. Whether these opinions mandate the conclusion that Plaintiff cannot work a full-time job is the crux of the issue as to whether Plaintiff is disabled.

With respect to Dr. Bauer's opinion, the ALJ only gave it some weight

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

because it believed Dr. Bauer gave an inconsistent opinion since she also wrote Plaintiff was able to perform work activities on a consistent basis without special or additional instructions, while at the same time opining Plaintiff would have moderate difficulty maintaining regular attendance in the workplace, due to interruptions caused by her psychiatric conditions. The ALJ also concluded Dr. Bauer's opinion was contradicted by Plaintiff's social activities, based on Plaintiff indicating to Dr. Bauer that she is social with some friends, she makes breakfast for her husband for 30 years, and she likes to make homemade cards and wreaths.

Dr. Bauer is an examining medical source. Thus, in order to discount her opinion, the ALJ must provide specific and legitimate reasons that are supported by substantial evidence. The ALJ failed to do so. Throughout the opinion, the ALJ relied on the fact that Plaintiff engaged in activities that indicate she is not as limited as she claims. These activities include shopping at stores, mall and computer, driving a car, going outside alone, and pulling weeds as some of her yard work, as well as seeing friends, working craft projects and creating homemade cards and wreaths. The problem with the ALJ's reliance on these factors is that the longitudinal record does not substantiate these factors exist to a significant degree to support the ALJ's conclusion. *See Orn v. Astrue*, 495 F.3d 625, 634-35 (9th Cir. 2007) (viewing the record in its entirety and noting that where the ALJ's reasoning is belied by the record, it cannot constitute a "specific and legitimate" reason for rejecting the controverted opinion).

For instance, her husband indicates that he is the one going shopping. While Plaintiff testified that she went to the craft store after she had been to the dentist, the record indicates that her trips to the store are few and far between. It is clear she does not go to the store every week to shop. Similarly, while the ALJ relied on the fact that she arranges flowers for her friends, this also happens few and far between. She made an arrangement for a funeral that occurred four months prior to the hearing. There is nothing in the record to suggest that Plaintiff routinely

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

interacts with her friends on a consistent basis. Plaintiff testified that she sees her family every couple of months—not days or weeks. If she is not mentally feeling well, she misses the family events, including saying goodbye to her nephew who was leaving to go to Afghanistan.

Also, it is clear from the record that Plaintiff has good days and bad days. On her good days, she can shop and go to work. On her bad days, she cannot. The problem is that her bad days interferes with her ability to work five days forty hours a week. This was the reason she was let go after working for a company for 17 years. The ALJ erred by failing to consider the entire record in determining the extent Plaintiff's daily living activities demonstrate her ability to work. The ALJ's conclusions that Plaintiff's daily living activities are inconsistent with her alleged limitations are not supported by substantial evidence in the record.

The ALJ erred in failing to provide specific and legitimate reasons for giving less weight to Dr. Bauer's opinions, notwithstanding the fact that she was an examining medical source.

With respect to Dr. Gollogly's opinion that Plaintiff's psychological symptoms would affect her attendance occasionally, the ALJ concluded that Dr. Gollogly did not intend to use the term "occasionally" in the vocational way. Rather, the ALJ assumed that because the use of the term "occasionally" did not square with his conclusion that Plaintiff would be able to persist at simple routine tasks, Dr. Gollogly must not have intended to use the term "occasionally" as a term of art used in the social security context. However, the ALJ accorded Dr. Gollogly's opinion significant weigh as expert-opinions within the meaning of SSR 96-6p.[2]

---

[2] State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. As members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings), they consider the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**

According to Social Security Administration Program Operations Manual System (POMS), occasionally is defined as:

> (34) Frequency of physical demands and environmental condition components in the SCO[3]: With respect to the absence or presence of physical demand and environmental condition components, occasionally means: Activity or condition exists up to one-third of the time.
> (54) Occasionally. Use of this term in the SCO or RFC means that the activity or condition occurs at least once up to one-third of an 8-hour workday.

POMS DI 25001.001.

The ALJ's rationalization of Dr. Gollogly's use of the term occasionally makes no sense. On the one hand, the ALJ views Dr. Gollogly's opinion as an expert in the social security context, then concludes that Dr.Gollogly must not have relied on his social security expertise when he used the term "occasionally." Moreover, the use of the term occasionally by Dr. Gollogly is supported by the record and by other opinions, including Dr. Bauer and Ms. Neer. The ALJ's

---

medical evidence in disability cases and make findings of fact on the medical issues, including, but not limited to, the existence and severity of an individual's impairment(s), the existence and severity of an individual's symptoms, whether the individual's impairment(s) meets or is equivalent in severity to the requirements for any impairment listed in 20 CFR part 404, subpart P, appendix 1 (the Listing of Impairments), and the individual's residual functional capacity (RFC). . . . the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant. SSR 96-6p.

[3] Selected Characteristics of Occupations (SCO).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12**

interpretation of Dr. Gollogly's opinion is based on speculation and belied by the record; therefore it is not supported by substantial evidence.

With respect to Ms. Neer's opinion, the ALJ accorded less weight to her opinion because as a physician's assistant she is not an acceptable medical source under SSR 06-03p and because she did not acknowledge any of Plaintiff's concurrent activities. The ALJ believed that these activities reflect a higher level of mental functioning than alleged.

Physician's assistants are defined as "other sources," 20 C.F.R. § 404.1513(d), and are not entitled to the same deference as treating or examining physicians. SSR 06–03p. The ALJ may discount testimony from these "other sources" if the ALJ "'gives reasons germane to each witness for doing so.'" *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). Those factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the doctor. *Revel v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see also* 20 C.F.R. § 404.1527(c)(2)–(6). Under certain circumstances, the opinion of a treating provider who is not an acceptable medical source may be given greater weight than the opinion of a treating provider who is—for example, when the provider "has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." *Id.*; *see also* 20 C.F.R. § 404.1527(f)(1).

Here, the ALJ erred in failing to consider the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in making its determination regarding the amount of weight to give Ms. Neer's opinion. Although Neer is not an "acceptable medical source," she is an "other source" and there are strong reasons to assign weight to her opinion. Neer was a treating source who treated Plaintiff since 2013 and

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13**

prescribed her medications to deal with her depression and anxiety. *See* 20 C.F.R. § 404.1527(c)(1)–(2), (f) (explaining that an opinion from a source who has examined the claimant and had a longer treatment relationship should generally be given greater weight). Moreover, Ms. Neer was in a unique position as a primary care provider, as she had an overview of Plaintiff's conditions. The ALJ's decision to give Ms. Neer's opinion little weight is not supported by substantial evidence. As set forth above, the ALJ improperly assessed Plaintiff's daily living activities in concluding that her level of activities demonstrated the ability to work a five-day, 40 hour work week.

In sum, the medical sources all agree that Plaintiff can perform simple and routine tasks, and even complex tasks. The ALJ relied on this finding to conclude that it would be inconsistent to be able to complete these tasks, but then also miss work due to Plaintiff's mental health limitations. The ALJ failed to explain how these two findings are inconsistent. Also, there is no inherent reason to conclude that these two findings are inconsistent. At issue is whether Plaintiff can work full-time. The record supports only one conclusion. She cannot. As such, the ALJ erred in rejecting the medical sources opinion that Plaintiff's mental health limitations would cause her to absent from work to a degree that full-time work would not be sustainable.

*2. Whether the ALJ properly considered lay witness testimony from Glen Bangs*

The ALJ considered the third-party statement by Plaintiff's husband, Glen R. Bangs.

Mr. Bangs completed a Function Report on May 8, 2014, and also submitted a letter. In his letter, he wrote, in part:

> Throughout her employment with all of her employers her work ethic and attendance was outstanding. All reviews Dari received throughout the years about her work and attendance was outstanding. None of her employers had a negative word to say about her.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**

Dari was an outgoing and intelligent woman, mother and wife. Always going to visit family and friends, never wanting to miss a family function. We always took the children camping during the summer weekly and generally to the ocean yearly.

In the winter of 1997-1998 you could see a significant change in her personality. She seemed depressed and withdrawn. You could see slight changes in her for up to a year or more prior to that. Not wanting to do as many things with friends and family.

***

In 2006 and 2007 you could see she was becoming more and more depressed and reclusive. Dari did not want to go anywhere and when friends would come over she would retreat to the bedroom until everybody left. When I would confront her about her behavior she would assure me everything was alright if I pushed the issue she would get upset and go back to the bedroom. Dari all but stopped going to see her family. She has 2 brothers who are married with 2 children each a mother and at that time a grandmother. In the early years she would go see her grandmother on a weekly basis. Then less often as time passed. I cannot remember when her grandmother passed away but after her passing she would see her family even less.

Dari was missing work on a regular basis several times a week using all her personal time off (PTO time). Which led to time off without pay. In all Dari's years of employment she had never used all her time off. We would take summer vacations and she may have a couple sick days at the most. So it was very out of character to call in so much she was loosing [sic] pay. In January and February of 2007, I believe it was 2007, she rarely made it to work 1 to 2 days per week. The people at Argus worked with her very patiently during this time. Sometime I believe it was in February she attempted suicide again.

***

Prior to the suicide attempt Dari was hearing voices and speaking to things that were not there it was very scary behavior to see someone you love to act this way. I am a correctional officer and have worked with people with this behavior and symptoms in the past. I knew what should have been done but, it was different when

it is somebody you love. I just kept trying to talk with her but she was just not the person I had known all these years. Dari's thoughts and behavior was just not her and I didn't or couldn't do what was necessary. She would be up at all hours of the day and night babbling and walking around.

You could not rationalize with her at all. This went against everything I had ever known about her. Dari's employer Argus had kept her job for her and for a few years she did well. They gave her schedule of Monday, Tuesday, Thursday and Friday with Wednesday, Saturday and Sunday off. In 2010 or there about Dari started missing work on a regular basis again. Always saying she just did not feel well. She would only visit family on special occasions and then still at times not go for birthdays and holidays. By the time January 2014 came around she had missed so much work she was on no pay status. Her attention span was short and sometimes conversations were hard to carry on with her because she would take so much time trying to say what she wanted. Dari had always weighed 135 to 145 pounds this medication over the years has caused her to gain approximately 100 pounds.

\*\*\*

Dari has always loved arts and crafts making bows, flower arrangements and greeting cards. So after loosing [sic] her job of 17 years she applied at a flower shop and worked there for 2 weeks. She loved her new job and thought everything was going well. Her new employer was telling her what a good job she was doing and she was happy. During the second week the owner asked her if anyone had ever told her that she had a short attention span or was distracted easily and proceeded to tell her it was not going to work out and Friday would be her last day. Dari was crushed and started crying so the owner said she would give her one more week but Dari was so devastated she said no and has hardly worked with arts and crafts since.

For year now she has had difficulty being around strangers and even family and friends. She finds it hard to go out and do things she would like to do. Some days are better than others and she will find

the strength to interact with others and go shopping. I do most of the household shopping that needs to be done.

AR 232-33.

Mr. Bangs goes on to describe instances where Plaintiff was unable to interact socially with her family and friends, either declining to go at the last minute or hiding out in her bedroom and only coming out after the guests had left. *Id.*

The ALJ accorded Mr. Bangs' testimony only some weight because his descriptions portrayed an individual with some functional limitation, as consistent with the established diagnoses, but not to the degree alleged in the application for disability. AR 26.

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). In order to discount competent lay witness testimony, the ALJ must give reasons that are germane to the witness. *Id.*

Here, the ALJ failed to provide germane reasons to reject Mr. Bangs' testimony. As set forth above, the ALJ's erred in concluding that Plaintiff's daily living activities were inconsistent with the inability to work on a full-time basis. As this was the only reason for rejecting Mr. Bangs' testimony, the ALJ erred in failing to fully credit his testimony.

3. *Whether the ALJ properly evaluated Plaintiff's symptom claims.*

The ALJ concluded that Plaintiff's statements regarding her limitations and ability to work full-time were not supported by the record. As set forth above, the ALJ erred in concluding that Plaintiff's activities were inconsistent with her claim that she cannot work full-time.

An ALJ's assessment of a claimant's credibility is entitled to "great weight." *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir.1990). When there is no evidence of malingering, the ALJ must give "specific, clear and convincing

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17**

reasons" for rejecting a claimant's subjective symptom testimony. *Molina*, 674 F.3d at 1112 (citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. §§ 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186. Daily activities may be grounds for an adverse credibility finding if (1) Plaintiff's activities contradict her other testimony, or (2) Plaintiff "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The Ninth Circuit has "warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18**

pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Recognizing that claimants should not be penalized for attempting to lead their normal lives, "only if Plaintiff's level of activity is inconsistent with his claimed limitations would these activities have any bearing on his credibility." *Id.*

The ALJ erred in concluding that Plaintiff's participation in crafts and reading indicates that she does not have concentration issues. There is no correlation between working on crafts or reading when you have good days and working full-time without missing work on your bad days. The activities relied upon by the ALJ, *i.e.* buying flowers, having a small group of friends, and remaining married, do not translate into skills needed to sustain full-time work. The Court is especially concerned that the ALJ relied on the fact that Plaintiff has remained married for 30 years as a reason to discredit her symptom testimony. The Court does not see the connection. Does the ALJ believe that if Plaintiff's mental health issues were as bad as both she and her husband indicate, there is no doubt her husband would have divorced her? It is both illogical and disturbing to rely on Plaintiff's stable and long-lasting marriage as a reason to discredit her testimony.

The ALJ also relied on the fact that Plaintiff collected unemployment during the same period that she claims she became disabled. The ALJ surmised that in order to collect unemployment, Plaintiff would have to hold herself out as capable and available for full-time work. AR 24. While continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds herself out as capable of working, the fact that Plaintiff attempted to return to work and was unsuccessful supports her claim for disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Here, the record demonstrates that during this time period, Plaintiff was unsure if she would be able to work full-time, she tried to do so, and after two weeks, she was fired.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19**

## Conclusion

The ALJ erroneously discounted the medical opinion evidence, Plaintiff's testimony, Mr. Bangs' testimony and other evidence that clearly indicates Plaintiff is unable to sustain full-time work. The only question then, is whether to remand a case for additional evidence or simply award benefits. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The Ninth Circuit has instructed that where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand" the court should remand for an award of benefits. *Trevizo*, 871 F.3d at 683.

Here, remand for the calculation and award of benefits is warranted.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~** 20

Accordingly**, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 11, is **DENIED**.

3. The decision of the Commissioner denying benefits is **reversed** and **remanded** for an award of benefits, with a disability onset date of February 4, 2014.

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and close the file.

**DATED** this 24th day of September 2018.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21**